UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANITA BRYANT, on behalf of
herself and all other similarly situated,

      Plaintiff,

v.                                  Case No. 8:18-cv-2572-T-60CPT

REALOGY GROUP, LLC,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

      Before me on referral is the *Plaintiff's Unopposed Motion for Preliminary Approval of Settlement and Notice to Settlement Class*. (Doc. 35). For the reasons discussed below, I respectfully recommend that the Plaintiff's motion be granted.

### I.

      In September 2018, Plaintiff Anita Bryant, on behalf of herself and others similarly situated, filed a putative class action complaint in the Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida, against Defendant Realogy Group, LLC (Realogy). The gist of Bryant's complaint is that Realogy used an outside consumer reporting firm (HireRight) to perform background checks for many of its job applicants and, from time to time, its own employees without making the

appropriate disclosures and without obtaining the proper authorizations required by the Fair Credit Reporting Act (FCRA or the Act), 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).[1] (Doc. 1-1).   Bryant alleges in this regard, *inter alia*, that the disclosure forms Realogy utilized impermissibly contained "extraneous" information that was "misleading" or "confusing" and that the infirmities in the disclosure forms rendered the job applicants and employees' subsequent authorizations invalid.   *Id.*   Bryant further avers that these FCRA violations were willful and contravened the purposes of the Act's notice provisions by depriving Realogy's employees and job applicants of notice that consumer reports about them might be prepared and by precluding them from exercising their rights under the Act and other statutes to ensure the reports' accuracy, confidentiality, and fairness.   *Id.*

---

[1] The FCRA's provisions governing "Disclosure to consumer" state, in relevant part:

> (A) In general
> Except as provided [herein], a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists *solely* of the disclosure, that a consumer report may be obtained for employment purposes; and
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added).

    Any person who willfully fails to comply with the FCRA is liable for actual or statutory damages of $100 to $1,000 per violation, attorneys' fees and costs, and—in some instances— punitive damages.   *Id.* at § 1681n(a).

In October 2018, Realogy removed the action to federal court and simultaneously filed an answer denying any liability or wrongdoing.   (Docs. 1, 2).

Roughly one and a half months later, in late November 2018, Realogy moved to transfer the case to the United States District Court for the District of New Jersey. (Doc. 12).   At the same time, the parties moved to stay the proceedings until the Court ruled on that transfer motion.  (Doc. 11).   The Court granted a stay in December 2018.   (Doc. 14).   In the interim, the parties agreed to conduct discovery and participate in mediation.   (Doc. 35 at 2).

In June 2019, the parties took part in mediation and, after "a full day" of "often contentious" discussions, ultimately agreed upon terms settling the matter.   *Id.* Those settlement terms are outlined in the Joint Stipulation of Class Settlement (Doc. 35-1), for which the parties now seek preliminary Court approval.

As outlined by the parties, the key terms of the settlement are as follows:

- Certification, for settlement purposes, of a class consisting of all employees and job applicants of [Realogy] in the United States who were the subject of a consumer report that was procured by [Realogy] for employment purposes from September 18, 2016 through June 6, 2019 (Settlement Class)—a class of approximately 8,154 people;[2]

---

[2] The "Settlement Class" is more particularly defined in the parties' Joint Stipulation of Class Settlement as "[a]ll individuals as to whom, during the Covered Period, were subject to at least one consumer report conducted by HireRight and procured by [Realogy] between September 18, 2016 and June 6, 2019 [the Covered Period]."   (Doc. 35-1 at 10).

- [Realogy] agrees to establish a gross Settlement Fund in the amount of $407,700.00.   Class Members shall have forty-five (45) days to submit claims.

- Every Settlement Class Member who timely submits a proper Claim Form will receive an award estimated to be $50.00;

- Payment from the Settlement Fund of an attorneys' fees award not to exceed $135,700.00, if approved by the Court, plus reimbursement from the Settlement Fund for litigation-related costs and expenses;

- Payment from the Settlement Fund of a service award to the named plaintiff [Bryant] aproved by the Court, not to exceed $5,000.00;

- Notice and Administration by a Settlement Administrator deducted from the Settlement Fund not to exceed $25,000.00; and

- Any unclaimed funds from the Net Settlement Fund [3] and any uncashed settlement compensation after the expiration of the 30-day period for negotiating checks used to distribute the Net Settlement Fund shall automatically revert back to [Realogy].

(Doc. 35 at 2-3).

On the basis of these terms and for the reasons set forth in their motion, the parties ask the Court to: (1) certify the proposed class for settlement purposes; (2) approve the Joint Stipulation of Class Settlement (Doc. 35-1) on a preliminary

---

[3] The "Net Settlement Fund" is defined as the "amount of money remaining after the Settlement Fund is reduced by," *inter alia*, the "Class Representative Service Payment approved by the Court;" the "Class Settlement Administration Costs approved by the Court;" "Reimbursement to Class Counsel for the cost of mediation and other incurred costs approved by the Court;" and "Reimbursement to Class Counsel for attorney's fees and costs in an amount up to one-third of the Settlement Fund approved by the Court."   (Doc. 35-1 at 6).

basis; (3) appoint Bryant as class representative; (4) appoint Bryant's counsel as class counsel; (5) approve the proposed Notice of Class Action Settlement for distribution to the Settlement Class (Doc. 35-1, Exh. 2); and (6) schedule a fairness hearing for final approval of the settlement and set deadlines associated with that hearing.   (Doc. 35). Each of these requests is addressed in turn below.

II.

*A.   Certification of Proposed Class*

Rule 23 of the Federal Rules of Civil Procedure sets forth the general framework for class action proceedings.   That rule provides, in relevant part, "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."   Fed. R. Civ. P. 23(e).   In accordance with this directive, courts have found that a "class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue." *Diakos v. HSS Sys., LLC*, 137 F. Supp. 3d 1300, 1306 (S.D. Fla. 2015) (quotation and citations omitted).   Such class certification determinations are "left to the sound discretion of the district court."   *Cooper v. S. Co.*, 390 F.3d 695, 711 (11th Cir. 2004) (citations omitted), *overruled on other grounds by Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 457-58 (2006).   Indeed, "[a]s long as the district court's reasoning stays within the parameters of Rule 23's requirements for the certification of a class, the district court

decision will not be disturbed." *Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003) (citations omitted).

Even where the parties agree to class certification, the Court must still conduct a multi-pronged inquiry as to whether the class is certifiable.   In particular, the Court must find that (1) the named plaintiff has standing, (2) all four prerequisites for class certification under Rule 23(a) are satisfied—namely, numerosity, commonality, typicality, and adequacy of representation; and (3) at least one of the requirements of Rule 23(b) is met.   *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (citation omitted); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1265 (11th Cir. 2009); *Hines*, 334 F.3d at 1255 (citations omitted); *see also* Fed. R. Civ. P. 23.

## 1.   Standing

I begin with the threshold question of standing.   To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citations omitted).    A violation of a statutory right—including a statutory right to information—can create an injury sufficient to provide standing.   *See Church v. Accretive Health, Inc.*, 654 F. App'x 990, 994-95 (11th Cir. 2016) (holding that not receiving information to which one is statutorily entitled is a "concrete" injury); *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002 (11th Cir. 2016) (noting that a

6

"plaintiff who alleges a violation of a statutory right to receive information alleges a concrete injury") (citations omitted).

With respect to the FCRA, courts have found that the Act establishes two statutory rights: (1) "'a right to specific information in the form of a clear and conspicuous disclosure;'" and (2) "'a right to privacy in one's consumer report that employers may invade only under stringently defined circumstances.'" *Moody v. Ascenda USA Inc.*, 2016 WL 5900216, at *6 (S.D. Fla. Oct. 5, 2016) (quoting *Thomas v. FTS USA, LLC*, 2016 WL 3653878, at *8, 11 (E.D. Va. June 30, 2016)).   Courts have also concluded that the denial of these statutory rights amounts to an "informational injury" and an invasion of privacy, and that both of these harms constitute an injury-in-fact sufficient to confer standing.   *Fosbrink v. Area Wide Protective, Inc.*, 325 F.R.D. 474, 479 (M.D. Fla. 2018) (finding informational injury in the form of a deprivation of the statutory right under FCRA to receive a stand-alone disclosure sufficient to confer standing); *Hargrett v. Amazon.com DEDC LLC*, 235 F. Supp. 3d 1320, 1325-26 (M.D. Fla. 2017) (concluding that "standing is sufficiently established in this case inasmuch as Plaintiffs have at least three kinds of harm: invasion of privacy, informational harm, and risk of harm"); *Moody*, 2016 WL 5900216, at *5-6 (finding plaintiffs had standing to pursue FCRA claim by alleging informational injury and a privacy invasion, collecting cases, and recognizing split of authority on the issue).

As noted above, Bryant avers in her complaint that Realogy procured consumer reports on its employees and job applicants without first making the proper disclosures

and without obtaining the proper authorizations required under the Act.   (Doc. 1-1).
As a result of these alleged violations, Bryant claims both informational harm and an
invasion of privacy.   *Id.*   In accordance with the above-cited case authority, I find
that such allegations support Bryant's standing to proceed as the named plaintiff in
this case.

## 2.  Rule 23(a)'s Requirements

As noted above, Rule 23(a) imposes four requirements: numerosity,
commonality, typicality, and adequacy of representation.   To satisfy the first of these
requirements, a class must be "so numerous that joinder of all members is
impracticable."   Fed. R. Civ. P. 23(a)(1).   The parties here submit that the class is
comprised of approximately 8,154 people.   (Doc. 35-1).   This number easily satisfies
the numerosity requirement.   *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553
(11th Cir. 1986) (citing 3B Moore's Fed. Prac. ¶ 23.05[1] at n.7 (1978)) ("[T]here is no
fixed numerosity rule, [but] generally less than twenty-one is inadequate, more than
forty adequate, with numbers between varying according to other factors.") (internal
quotation marks omitted).

To meet the second requirement of commonality, a plaintiff must "demonstrate
that the class members have suffered the same injury," and that "[t]heir claims . . .
depend upon a common contention."   *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338,
349-50 (2011) (citation and internal quotation marks omitted).   The phrase "common
contention" for purposes of this analysis is a contention "of such a nature that it is

8

capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350 (citation and internal quotation marks omitted).  Although the exact claim or statutory violation need not be the same for all class members, *id.*, "[c]ommonality requires 'that there be at least one issue whose resolution will affect all or a significant number of the putative class members,'" *Bussey v. Macon Cty. Greyhound Park, Inc.*, 562 F. App'x 782, 788 (11th Cir. 2014) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)).

In this case, Bryant asserts that common questions of law and fact exist among the proposed class members insofar as they all applied for employment at or were employed by Realogy, and Realogy procured consumer reports about them during the relevant period.  (Doc. 1-1).  Bryant submits that commonality is "met by the common questions of (1) whether including any material in a disclosure form beyond the mere fact that a prospective employer will obtain a consumer report [i.e., including alleged "extraneous" information of the type at issue here] violates the FCRA and (2) whether Defendant willfully violated the FCRA."  (Doc. 35 at 12)  In my view, resolution of either of these issues will affect all—or at least a significant number—of the putative class members, and thus Rule 23(a)'s commonality requirement is satisfied.  *See Dukes v. Air Canada*, 2020 WL 487152, at *2 (M.D. Fla. Jan. 27, 2020), *report and recommendation adopted*, 2020 WL 496144 (M.D. Fla. Jan. 30, 2020).

Rule 23(a)'s third requirement—typicality—mandates that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).   This means that "the claims or defenses of the class and the class representative arise from the same event or pattern or practice and are based on the same legal theory."   *Williams*, 568 F.3d at 1357 (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)).

Here, Bryant's claims are typical of the Settlement Class because they concern the same alleged practices by Realogy in procuring consumer reports, arise from the same legal theories, and assert the same types of harms and entitlement to relief.   As a result, the typicality requirement is met.

Rule 23(a)'s fourth requirement—adequacy—is satisfied where "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).   This requirement involves two separate inquiries: (1) whether any substantial conflicts of interest exist between the named representatives of the class and the class members; and (2) whether the representatives will adequately prosecute the action.   *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003)).

The record before the Court reveals no conflicts of interest between Bryant and the class members.   Moreover, it appears that Bryant, along with her counsel, will

adequately prosecute this action on behalf of the class.   Accordingly, Rule 23(a)'s adequacy requirement is satisfied.

### 3.   Rule 23(b)'s Requirements

As a final condition to class certification, the proposed class must meet at least one of the three requirements listed in Rule 23(b).   Fed. R. Civ. P. 23(b)(1)-(3).   Here, Bryant relies on Rule 23(b)(3), which applies when the court determines: (a) "the questions of law or fact common to class members predominate over any questions affecting only individual members;" and (b) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."   Fed. R. Civ. P. 23(b)(3).[4]

In order to satisfy Rule 23(b)(3)'s "predominance" prong, a court must find that the issues subject to generalized proof applicable to the class as a whole "predominate over those issues that are subject only to individualized proof."   *Babineau v. Federal Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)).[5]   The Eleventh Circuit has explained that this issue requires a "pragmatic assessment of the entire action and all the issues

---

[4] The Supreme Court has explained that Rule 23(b)(3) "allows class certification in a much wider set of circumstances but with greater procedural protections."   *Dukes*, 564 U.S. at 362. And, unlike the other two types of classes described in Rule 23(b), the Rule(b)(3) "class is not mandatory; class members are entitled to receive 'the best notice that is practicable under the circumstances' and to withdraw from the class at their option."   *Id.* (citing Fed. R. Civ. P. 23(c)(2)(B)).

[5] Although "predominance" requirement is similar to the "commonality" requirement, the former is "far more demanding" than the latter.   *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (quoting *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 624 (1997)).

involved." *Cordoba*, 942 F.3d at 1274 (quoting *Williams*, 568 F.3d at 1357). "[C]ommon issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's . . . entitlement to injunctive and monetary relief." *Id.* (quoting *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (internal quotation marks omitted; second alteration in original). Common issues will not predominate over individual questions, however, "if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Id.*

In this case, it is evident that common questions predominate over individual legal and factual issues. As noted above, these common questions include whether a disclosure form that goes beyond simply stating a prospective employer will obtain a consumer report violates the FCRA and, if so, whether Realogy's failure to comply with the FCRA was willful. Such common issues can be decided classwide. *See Gross v. Advanced Disposal Servs., Inc.*, 2018 WL 8415876, at *7 (M.D. Fla. Dec. 10, 2018) (granting class certification in FCRA case and finding that the issues raised "can be decided uniformly for all class members"); *Fosbrink*, 325 F.R.D. at 483 (finding predominance requirement satisfied in FCRA case). In addition, as also noted, all of the class members either applied for employment at or were employed by Realogy and had at least one consumer report procured by Realogy during an approximately three-year period. The type and form of the FCRA consumer report notices they received during this time frame appear to be subject to generalized proof. *Coles v. StateServ*

*Med. of Fla., LLC*, 2018 WL 1181645, at *5 (M.D. Fla. Mar. 5, 2018) ("Whether Defendants' Disclosure Forms violated the FCRA does not require an individualized inquiry.").

In assessing Rule 23(b)(3)'s "superiority" prong, courts look to the four non-exclusive factors listed in the provision itself:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).

Here, as to the first factor and as represented by the parties, each class member's estimated recovery would amount to roughly fifty dollars.   Given this modest sum, it is unlikely that the class members would be interested in instituting a lawsuit on their own or in controlling their own individual actions.

With respect to the second and third factors, the parties have not identified any other pending litigation already commenced by other class members.   And, while Realogy has filed a motion to transfer venue (Doc. 10), I see no reason at this point why this forum would pose any difficulties for effectuating a nationwide settlement or ultimately litigating this case.

Finally, as to the fourth factor, the fact that the parties request certification of a settlement class obviates the need to "inquire whether the case, if tried, would present

13

intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620 (internal citation omitted).   Even were that not the case, resolution of the common issues for more than 8,000 possible class members in a single, coordinated proceeding is superior to 8,000 individual lawsuits addressing the same legal and factual issues.   The alternative of having numerous individual claims for damages arising out of the same conduct is neither an efficient use of judicial resources nor fair to Realogy or the class members.

In light of all of the above, I find that the proposed class complies with each of the elements necessary for certification, and that certification of the proposed class for settlement purposes is therefore appropriate under Rule 23.   Accordingly, I find that the Court should conditionally certify the proposed Settlement Class.   (Doc. 35-1 at 10).

## B.   Preliminary Approval of Settlement

As noted previously, a class action may be settled only with court approval. Fed. R. Civ. P. 23(e).   Preliminary approval—as the parties request here—is the first step in the settlement process.   4 Newberg on Class Actions § 13:10 (5th ed.).   "[T]he court's primary objective at [this] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing."   *Id.*; *see also Pierre-Val v. Buccaneers Ltd. P'ship*, 2015 WL 3776918, at *1 (M.D. Fla. June 17, 2015).   Preliminary approval is generally granted "so long as the

14

moving parties demonstrate that the court will likely be able to grant final approval to the settlement."   Newberg, § 13:15 (internal quotation marks and footnote omitted).

In order to approve a settlement, the court must find that "it is fair, adequate and reasonable" and that it "is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (internal quotation marks and citation omitted).   Courts often consider a number of factors in undertaking this analysis, including:

> (1) the influence of fraud or collusion on the parties' reaching a settlement, (2) the likelihood of success at trial, (3) the range of possible recovery, (4) the complexity, expense[,] and duration of litigation, (5) the substance and amount of opposition to the settlement, and (6) the stage of proceedings at which the settlement was achieved.

*Holman v. Student Loan Xpress, Inc.*, 2009 WL 4015573, at *4 (M.D. Fla. Nov. 19, 2009) (internal quotation marks omitted; citation omitted; alteration in original); *see also Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *8 (S.D. Fla. Apr. 13, 2016).

As with the certification of a proposed class discussed above, courts have substantial discretion in determining whether to approve a settlement agreement. *Bennett*, 737 F.2d at 986    In exercising their discretion, courts should take into account the "strong judicial policy favoring settlement as well as . . . the realization that compromise is the essence of settlement."   *Id.* (citing *United States v. City of Miami*, 614 F.2d 1322, 1344 (5th Cir. 1980)).   Courts should also "give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in

unique positions to assess the potential risks." *Pierre-Val*, 2015 WL 3776918, at *1 (citations omitted).

Turning to the first of the factors identified above, there is no evidence here of fraud or collusion.   To the contrary, the proposed settlement appears to be the result of serious, arms-length negotiations between the parties, with the benefit of both discovery and the assistance of experienced counsel and a seasoned mediator.   (Doc. 35 at 2, 5-6).

As to the second factor, success at trial on the merits of the case is uncertain. As previously stated, while Bryant insists on the merits of her position, Realogy denies liability for the FCRA violations and has asserted various defenses.   (Doc. 2).   The negotiated settlement would avoid the risks of litigating these disputes and the likely possibility of a protracted and expensive process.

With respect to the third factor, the proposed recovery for class members is within the range of reasonableness.   As previously noted, the parties propose that Realogy will establish a gross settlement fund in the amount of $407,700, and that each class member who timely submits a claim will receive a monetary payout estimated at $50.   (Doc. 35 at 2).   Bryant's motion evidences that this amount is comparable to settlement awards that have been approved in many FCRA cases throughout the country.   (Doc. 35 at 9-10); *see also Air Canada*, 2020 WL 496144 (granting final approval of FCRA class settlement in which class members were projected to receive $41.61).

16

As for the fourth and sixth factors, this action has already been pending for more than a year, has been substantially litigated, and would be expensive, time-consuming, and likely contentious if it did not settle.

With respect to the fifth factor, the substance and amount of opposition to the settlement are unknown at this time, as the proposed class members have yet to be notified.   These considerations are therefore more appropriately evaluated at the final approval stage.

Because factors one through four and six weigh in favor of settlement approval at this juncture, I find that preliminary approval of the settlement is appropriate.

### C.   Appointment of Class Representative

Given the stipulation of the parties, I see no reason why Bryant should not be named as class representative.   As the named plaintiff, Bryant has assisted with litigating this action to date and will adequately represent the interests of the class.   As such, the Court should appoint Bryant as class representative.

### D.   Appointment of Class Counsel

Once a class is certified, Rule 23 requires the court to appoint class counsel. Fed. R. Civ. P. 23(g)(1).   In appointing class counsel, the court "must consider:"

> (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

17

*Id.* The court may also evaluate "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." *Id.*

Here, the parties request that Marc R. Edelman of Morgan & Morgan, P.A., be appointed class counsel. (Doc. 35-1). In his Declaration attached to the instant motion, Edelman attests, among other things, that he (1) has litigated this action from its inception, including by drafting the complaint and all subsequent motions; (2) has nearly twenty years of practice, much of which has been dedicated to labor and employment law; (3) has significant experience handling class actions and has been appointed as class counsel in more than ten similar FCRA cases in this District and elsewhere; and (4) is a member of a law firm that currently employs over 500 attorneys, with vast resources at its disposal. (Doc. 35-2).

Based on my consideration of the above factors and given the matters presented, I find that attorney Edelman is qualified to be, and should be, appointed class counsel in this case.

E.   *Notice of Proposed Class Action Settlement for Distribution to the Settlement Class*

I also find that the Court should approve the proposed Notice of Proposed Class Action Settlement for distribution to the settlement class. (Doc. 35-1 at 32-33, Exh. 2).

When approving a class action settlement, Rule 23 provides that a court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Rule further instructs:

> For any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.   The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means.   The notice must clearly and concisely state in plain, easily understood language:
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

By my review, the proposed Notice of Proposed Class Action Settlement, along with the procedures outlined in the Joint Stipulation of Class Settlement (Doc. 35-1 & Exh. 2), satisfy these requirements and constitute the best notice that is practicable under the circumstances.   In particular, pursuant to the parties' stipulation, the notice will be sent to each class member via first class mail to the class member's last known address based on information contained in Realogy's records or obtained by the third-party settlement administrator.   (Doc. 35-1).   The notice is also written in language that is easy to understand and informs members of the class of (1) the nature of the case, (2) the definition of the settlement class, (3) the claims and defenses, (4) the right

of class members to retain their own attorney, (5) their right to request exclusion from the class, (6) the time and manner for requesting exclusion, and (7) the binding effect of the class judgment.

### F.   Fairness Hearing and Associated Deadlines

Finally, Bryant requests that, in conjunction with preliminary approval of the settlement, the Court schedule a date and time for a fairness hearing to determine final approval of the settlement.   Bryant also requests that the Court set deadlines for submitting claims, opting out, making objections, and filing a motion for attorney's fees and costs, class settlement administration costs, and an incentive award for Bryant.

In accordance with the parties' agreements (Doc. 35 at 16), I find this proposal reasonable and therefore recommend that the Court adopt the following schedule:

| | |
|---|---|
| Defendant to provide Class List to Settlement Administrator | No later than seven (7) calendar days after Preliminary Approval Order is issued |
| Settlement Administrator establishes Settlement Website | No later than seven (7) calendar days after Preliminary Approval Order is issued |
| Settlement Administrator mails Notice (Notice Date) | No later than seven (7) calendar days after Preliminary Approval Order is issued |
| Deadline for Motion for Attorney's Fees and Costs, Class Settlement Administration Costs, and Incentive Award for Plaintiff | Fourteen (14) days before Fairness Hearing |
| Deadline for Objections | Thirty (30) days after Notice is mailed by Settlement Administrator |

| Deadline for Opt Outs (Exclusion Requests) | Thirty (30) days after Notice is mailed by Settlement Administrator |
|---|---|
| Deadline for Filing Claims | Forty-five (45) Days after Notice is mailed by Settlement Administrator |
| Deadline for Filing Motion for Final Approval | Fourteen (14) days before Fairness Hearing |
| Fairness Hearing | TBD by the Court |

III.

For the foregoing reasons, I recommend that the Court:

1.      Grant the *Plaintiff's Unopposed Motion for Preliminary Approval of Settlement and Notice to Settlement Class* (Doc. 35);

2.      Conditionally certify the class for settlement purposes;

3.      Approve the Joint Stipulation of Class Settlement (Doc. 35-1) on a preliminary basis as fair, reasonable, and adequate;

4.      Appoint Anita Bryant as class representative;

5.      Appoint Marc R. Edelman as class counsel;

6.      Approve the Notice of Proposed Class Action Settlement for distribution to the Settlement Class (Doc. 35-1 at 32-33, Exh. 2); and

7.      Schedule a fairness hearing for final approval of the settlement and set the deadlines set forth in section II(F), *supra*.

Respectfully submitted this 16th day of March 2020.

HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen (14) days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections, or to move for an extension of time to do so, waives that party's right to challenge on appeal any unobjected-to factual finding(s) or legal conclusion(s) the District Judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Copies furnished to:
Honorable Thomas P. Barber, United States District Judge
Counsel of record

22