**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

ANITA BRYANT, on behalf of herself and
all others similarly situated,

    Plaintiff,

    vs.                                        Case No.: 8:18-cv-02572-TPB-CPT

REALOGY GROUP LLC,

    Defendant.
_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Anita Bryant ("Plaintiff" or "Class Representative"), by and through the undersigned counsel, hereby files this Unopposed Motion for Final Approval of Class Action Settlement and Incorporated Memorandum of Law, seeking the Court's final approval of the Parties' class action settlement ("Settlement Agreement" or "Agreement" - previously filed with the Court as an attachment to Dkt 35-1).

The Court has already preliminary approved the Parties' Settlement Agreement. (Dkt. 40). After preliminary approval was granted, notice was mailed to class members in accordance with the Court's Preliminary Approval Order. (Dkt. 40). The reaction has been overwhelmingly positive. No class member objected. Only fourteen class members asked to be excluded from the Settlement. Practically speaking, little has changed since the Court issued the Order granting preliminary approval, confirming the Settlement is fair, reasonable, adequate, and warrants final approval.

## I.   HISTORY OF THE LITIGATION

### A.   The Litigation

The Class Representative alleges in her Class Complaint (the "Complaint") that Defendant violated 15 U.S.C. § 1681b(b)(2)(A) of the FCRA by failing to: 1) disclose to the Class Representative and other of its employees, former employees, and/or prospective employees (in a document consisting solely of the disclosure) that it was going to obtain a consumer report for employment purposes prior to obtaining a copy of the actual report; and, 2) as a result, obtain the proper authorization under the FCRA to obtain those consumer reports (collectively, the "FCRA Claims").  More particularly, the Class Representative alleges that the FCRA disclosure form and purported authorization utilized by Defendant to obtain consumer reports for employment purposes did not comply with the requirements set forth in 15 U.S.C §§ 1681b(b)(2)(a)(i)-(ii).

Plaintiff and Defendant have been litigating this action since September 18, 2018. (Dkt. 1).  On November 26, 2018 the Plaintiff and Defendant jointly moved the Court to stay proceedings pending resolution of Defendant's anticipated Motion to Transfer Venue. (Dkt. 11). On November 30, 2018 Defendant moved to transfer venue to the United States District Court for the District of New Jersey. (Dkt. 12).  Plaintiff filed her response, which was followed by additional briefing from both sides. (Dkt. 19, 22, 23).  With Defendant's Motion to Transfer pending, the parties agreed to explore the possibility of resolution through mediation. (Dkt. 24). Leading up to the mediation, the parties exchanged discovery and other pertinent information pertaining to the case.  On April 9, 2020, this Court adopted Magistrate Judge Tuite's Report and Recommendation for this Court to preliminarily approve the Settlement Agreement and the Notice to Settlement Class. (Dkts. 38, 40).

## II. OVERVIEW OF SETTLEMENT TERMS AND RELIEF

### A. The Settlement Class And Benefits

The Settlement resolves the claims of a nationwide Background Check class consisting of consumers upon whom it is alleged Defendant unlawfully obtained a background check for employment purposes in violation of the Fair Credit Reporting Act ("FCRA"). Class members submitting claims forms will receive cash payments without having to show that Defendant willfully violated the FCRA.

If final approval is granted, the Settlement requires Defendant to create a Settlement Fund of $407,700.00. (Dkt. 35-1, ¶ 37). This represents a gross recovery of approximately $48.00 to each class member. All costs, expenses, fees, relief, and/or any payments of any kind in connection with or associated with this Settlement shall be paid from the Settlement Fund, including: (a) all payments to Settlement Class Members; (b) Class Representative Service Payment; (c) all costs of notice and settlement administration; and (d) all Attorneys' Fees and Costs, as approved by the Court.

Each Settlement Class Member who submitted a claim will receive a fixed payment of $50.00 from the Net Settlement Fund. Importantly, settlement awards are not subject to reduction for attorneys' fees, costs or any other settlement related expense. Settlement Class Members shall have 30 days from the date on which checks are mailed to negotiate their checks. Any unclaimed funds remaining in the Net Settlement Fund will revert to Defendant.

The monetary relief obtained by this proposed settlement demonstrates that this settlement is a very good result for the Class.

B.  **Notice And Administration**

The Parties utilized a private, Court-approved third-party vendor, Simpluris, Inc., to notify the Settlement Class of the settlement and to provide settlement administration services. The Parties agreed that the expense of providing notice to the Settlement Class and administering the settlement would be paid from the Settlement Fund.

Defendant provided the Settlement Administrator an electronic file containing the names and last known mailing addresses for 8,455 class members (See Exhibit "1," attached hereto - Salinas Decl., ¶ 4).  On April 17, the Settlement Administrator established a website, www.BryantFCRASettlement.com to make information about the settlement available to class members. (*Id*., ¶ 9).  That same day, the Settlement Administrator mailed the Court approved Class Notice and Claim Form by first class-regular U.S. Mail to 8,455 class members. (*Id*., ¶ 7). Initially, 794 Notices were returned as undeliverable without a forwarding address. (*Id*., ¶ 8). After conducting advance address research, Simpluris was ultimately able obtain address information for 635 class members. (*Id*.)  Ultimately, only 167 notice packets were deemed undeliverable. (*Id*.).

The Notices informed Settlement Class members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) their right to exclude themselves by opting out and how to do so; (4) that they will be bound by the Settlement Agreement if they do not opt out; (5) the date, time and location of the final fairness hearing scheduled by the Court; and (6) that the Court retains the right to reschedule the final fairness hearing without further notice. (*Id*., Ex. A).  The Class Notices also directed recipients to the settlement website, www.BryantFCRASettlement.com, which contained additional information about the Settlement and provided the toll free number (*Id*.).  These extensive efforts to provide

4

notice to the Settlement Class are "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

Initial payments to Settlement Class Members will be mailed by the Settlement Administrator by check and delivered by first-class U.S. mail, postmarked within 10 business days of the Effective Date. All initial checks will expire thirty (30) days after they are issued and will state the expiration date on their faces.

**C.     Class Members Overwhelmingly Support the Settlement**

The Settlement was supported by the Settlement Class. The deadline for exclusions and objections was June 1, 2020. There were **zero** objections, and **fourteen** requests for exclusion. (*Id.,* ¶ 11 ). Ultimately, 1,326 Class Members submitted Claims forms. (*Id.,* ¶ 10). This high claims rate combined with the complete absence of any objections and only fifteen requests for exclusion, reflect the positive reaction to the Settlement.

**D.     The Release of Claims**

In return for the substantial benefits Class Members will receive, all claims alleged in the Action (including Plaintiff's Complaint) and any known or unknown claims that were or could have been alleged based on the specific facts and/or legal theories alleged in the Plaintiff's Complaint and/or related to the current Action, including ones under the Fair Credit Reporting Act and any FCRA State/Local Equivalents, including but not limited to background check or consumer report disclosure notices and forms, the procurement and use of any background check or consumer reports (including but not limited to any claims under California Business & Professions Code section 17200), whether such factual basis is known or unknown at the time the release is approved by the Court. The period of the Released Claims extends to the limits of the Covered Period.

E. **Attorneys' Fees and Expenses**

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to $135,900.00 or approximately one third of the Settlement Fund as attorneys' fees plus costs of $8,445.85. Class Counsel will file a separate Motion for Attorney's Fees and Costs.

### III. THE PROPOSED CLASS HAS BEEN CERTIFIED AND THE NOTICE PLAN APPROVED

A. **The Class Has Already Been Certified**

The Court has already determined this action was proper for resolution on a class wide basis pursuant to Rule 23(a) and 23(b)(3). (Dkts. 38, 40.)  Since the Court's Preliminary Approval Order, no objections addressing class certification were received.  Thus, there is no reason to re-visit the Court's prior ruling.

B. **The Class Notice Met the Requirements of Rule 23(c) And Due Process**

Federal Rule of Civil Procedure 23(c)(2)(B) requires that class notice:

> [C]oncisely state in plain, easily understood language:
>
> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;
> (v) that the court will exclude from the class any member who requests exclusion;
> (vi) the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The Court-approved Notice satisfies each of these requirements. (Ex. A to Salinas Decl.).

As to the manner of providing notice, Federal Rule of Civil Procedure 23(c)(2)(B) provides, in pertinent part, that, "[f]or any class certified under Rule 23(b)(3) the Court must direct to class members the best notice practicable under the circumstances including individual

6

notice to all members who can be identified through reasonable effort." An individual mailing to each class member's last known address has been held to satisfy the "best notice practicable" test. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (noting that individual mailings satisfy Rule 23(c)(2)). Here, the Settlement Administrator exceeded these requirements.

C. **The Settlement is Fair, Reasonable, and Adequate**

In determining whether a proposed settlement is fair, reasonable, and adequate, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (citing *In re CP Ships Ltd. Secs. Litig.*, 578 F.3d 1306, 1317–18 (11th Cir. 2009)). "[D]etermining the fairness of a [class action] settlement is a discretionary decision for the trial court, though it should be 'informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.'" *United States ex rel. Balko v. Senior Home Care, Inc.*, No. 8:13-CV-3072-T-17TBM, 2017 WL 9398654, at *8 (M.D. Fla. May 2, 2017), *report and recommendation adopted*, No. 813CV03072EAKTBM, 2017 WL 3268200 (M.D. Fla. Aug. 1, 2017).

    1. **The Likelihood of Success at Trial Confirms Settlement is Appropriate**

Continuing the FCRA Litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses Defendant intended to assert if the case was not settled. From Plaintiff's perspective, there was a risk the Court would have granted Defendant's

7

motion to transfer the action. Even if the motion to transfer was denied, the Court could accept one or more of Defendant's arguments on a key point and dismissed the case, grant summary judgment, or refuse to certify the Class. Plaintiff's success on any of these aspects in motions practice, let alone at trial, was not guaranteed. And, of course, Plaintiff still faced the uphill battle of proving willfulness at trial even if she survived dispositive motions and was successful in certifying the Class. There is no certainty that continued litigation would provide a better outcome than the settlement. This factor therefore favors a finding that the Settlement is fair, reasonable, and adequate. *Youngman v. A&B Ins. & Fin., Inc.*, 2018 WL 1832992, at *7 (M.D. Fla. Mar. 22, 2018), *report and recommendation adopted*, 2018 WL 1806588 (M.D. Fla. Apr. 17, 2018) (approving settlement where plaintiffs faced similar difficulties of proof at trial).

Courts reviewing the issue of fairness have favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see In re Mexico Money Transfer Litig.*, 267 F.3d 743 (7th Cir. 2001); *Pinsker v. Borders Group, Inc. (In re BGI, Inc.)*, 465 B.R. 365, 379 (Bankr. S.D.N.Y. 2012) (approving class settlement with 17% cap on total liability, on grounds that "Class Members would have received nothing if they were not successful). Therefore, it is reasonable for the Class Members to take the bird in the hand instead of the prospective flock in the bush") (citations omitted); *Kizer*, 2012 U.S. Dist. LEXIS 63795, at *23–24 (approving class settlement awarding approximately 30% of possible recovery); *Smith*, 2007 U.S. Dist. LEXIS 85551, at *15 (approving class settlement where, "Plaintiffs concede that their case against the [] Defendants is not a sure success.")

### 2. The Recovery in the Settlement is Substantially Above the Minimum that Class Members May Recover at Trial

The Settlement provides a fixed payment of $50.00 to each Settlement Class Member, and which is comparable to awards in similar FCRA class cases. *Speer v. Whole Food Mkt. Grp., Inc.,* No. 8:14-CV-3035-T-26TBM, Document 68,(M.D. Fla. January 1, 2016)(final Order entered by Judge Lazzara approving $40 gross recovery for FCRA class members); *Simons v. Aegis Commc'ns Grp.,* No. 2:14-cv-04012, Document 29, (W.D. Mo. Oct. 15, 2014)(preliminarily approving improper disclosure settlement with payment of $35 per class member); *Beverly v. Wal-Mart Stores, Inc.*, No. 3:07-cv-469, Document 39, (E.D. Va. May 1, 2009) (approving settlement providing for $54 gross amount per class member).

### 3. Continued Litigation will be Complex, Expensive and Resource-Consuming

There is an inherent and substantial expense to continued litigation. If a settlement had not been reached, Plaintiff and Defendant both would have commenced intensified discovery. Discovery would have been followed by dispositive motions by Defendant in addition to Plaintiff's Motion for Class Certification, the outcomes of which would determine the course of the litigation. If Plaintiff were to prevail, the action would have proceeded to trial, with the significant expense and use of resources that accompanies trial preparation. Defendant would likely seek interlocutory review of the class certification decision, requiring additional time and briefing.

If Defendant were to prevail on a case dispositive motion, Plaintiff most likely would appeal. A summary-judgment victory for Defendant would not conclude the case, as successful appeal by Plaintiff would perpetuate the litigation. Under any scenario, Class Members would be deprived of any relief for a significant length of time.

Class and Defense Counsel are experienced class action litigators, who reached this Settlement with the assistance of an experienced mediator. The Parties exchanged and reviewed hundreds of pages of documents, and had sufficient information in their possession to evaluate their respective positions. Class Counsel strongly recommends that the Court approve the Settlement; a settlement Defendant does not oppose. Thus, the Court should approve the Settlement. *Fernandez*, 2017 WL 7798110, at *2.

### 4. There is No Opposition to Any Aspect of the Settlement

As noted above, nearly all Class Members have been notified of the Settlement. None objected. Only fourteen requested to be excluded. Class Counsel is not surprised at a lack of objections - the Settlement is a very good result for the Class. The complete absence of opposition to the Settlement favors a finding that it is fair, reasonable, and adequate. *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-CV-2424-T-23JSS, 2017 WL 2472499, at *1 (M.D. Fla. June 5, 2017) ("The absence of opposition to the settlement militates heavily toward approval.").

### 5. The Settlement was Reached at an Appropriate Stage of Proceedings

This factor focuses on assuring that "the plaintiffs have access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of the settlement against further litigation." *United States ex rel. Balko*, 2017 WL 9398654, at *12. In this case, Plaintiff certainly did. The Parties exchanged sufficient discovery prior to mediation. A nationally respected mediator oversaw settlement discussions, further confirming the adequacy of the Settlement. Class counsel is satisfied the case has been thoroughly investigated. Thus, the Court should conclude that this factor also favors granting final approval. See *Poertner v. Gillette Co.*, No. 6:12-CV-803-ORL-31DA, 2014 WL 4162771, at *4 (M.D. Fla. Aug. 21, 2014), aff'd, 618 F. App'x 624 (11th Cir. 2015) (finding similar facts weighed in favor of approval of settlement).

## IV. CONCLUSION

The Agreement is in the best interest of the Parties and Class, was reached through arm's-length negotiations through a well-respected mediator, and is fair and reasonable to all concerned.

WHEREFORE, the Plaintiff and Defendant respectfully requests that the Court enter a Final Order: (1) approving the Settlement Agreement between Plaintiff, on her own behalf and on behalf of the Settlement Class, and Defendant; (2) certifying the above-described Settlement Class for settlement purposes; and, (3) requiring the Parties to comply with the terms and conditions in the Settlement Agreement or pursuant to the Court's Order granting Final Approval.

Dated this 26th day of June, 2020.

/s/ *Marc R. Edelman*
Marc Reed Edelman, Esquire
Florida Bar No.: 0096342
MORGAN & MORGAN, P.A.
201 N. Franklin Street, #700
Tampa, FL 33602-5157
Telephone: 813-223-5505
Facsimile: 813-257-0572
medelman@forthepeople.com
*Attorney for Plaintiff*

### LOCAL RULE 3.01(g) CERTIFICATION

Counsel for the Parties have conferred and agree to the relief requested herein.

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of June, 2020, a copy of the foregoing was sent via electronic transmission and/or via U.S. Mail to the following:

Nancy A. Johnson, Esq.
Florida Bar No.: 597562
**LITTLER MENDELSON, P.C.**
111 North Magnolia Avenue, Suite 1250
Orlando, FL  32801.2366
najohnson@littler.com
*Attorneys for Defendant*

/s/ *Marc R. Edelman*
**MARC R. EDELMAN, ESQ.**